UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGEL TAPIA VIVANCO, an individual,<br><br>Plaintiff,<br><br>v.<br><br>FORD MOTOR COMPANY, a Delaware Corporation, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 22-CV-23 TWR (DEB)<br><br>**ORDER REMANDING ACTION TO THE SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**<br><br>(ECF No. 9) |

Presently before the Court is Defendant Ford Motor Company's Response ("Resp.," ECF No. 9) to Court's Order for Defendant Ford Motor Company to Show Cause Why This Action Should Not Be Remanded to State Court for Lack of Subject-Matter Jurisdiction ("OSC," ECF No. 6). Having carefully considered Defendant's arguments, the record, and the relevant law, the Court **REMANDS** this action to the Superior Court of California, County of San Diego.

## BACKGROUND

On December 1, 2021, Plaintiff Angel Tapia Vivanco filed a Complaint against Ford Motor Company in the Superior Court of California, County of San Diego. (*See generally* ECF No. 1-3 ("Compl.").) In the Complaint, Plaintiff alleges that he purchased a used

2019 Ford Mustang, VIN 1FATP8UHOK5148684 (the "Vehicle") from Perry Ford of National City on August 31, 2020. (*See id.* ¶ 8.) Plaintiff made a $6,500 cash down payment and financed $23.930.81. (*See id.*) Including all associated fees, the total amount payable on the purchase of the Vehicle was $54,018.56. (*See id.*)

Although Defendant made express and implied warranties regarding the Vehicle, (*see id.* ¶¶ 9–12), the "Vehicle was delivered to Plaintiff with "serious defects and nonconformities to warranty and developed other serious defects and nonconformities to warranty including, but not limited to, engine system defects." (*See id.* ¶ 10; *see also id.* ¶¶ 17–30.) Plaintiff therefore alleges three causes of action for violation of the Song-Beverly Consumer Warranty Act (the "Act"), California Civil Code §§ 1790, *et seq.*: (1) breach of express warranty, (2) breach of implied warranty, and (3) failure to service in violation of Section 1793.2. (*See id.* ¶¶ 5–8.)

On January 7, 2022, Defendant removed this action to federal court on the basis of diversity subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a). (*See generally* ECF No. 1, "NOR.") Specifically, Defendant alleges that "there is diversity of citizenship between Plaintiff, California citizens, and Ford, a citizen of Michigan and Delaware" (*see id.* ¶¶ 19–21), and that the amount in controversy, including the civil penalties under the Act and prospective attorneys' fees, exceeds $75,000. (*See id.* ¶¶ 9–18.)

Upon review of Plaintiff's Complaint and Defendant's Notice of Removal, the Court ordered Defendant to show cause why this action should not be remanded to the Superior Court of California, County of San Diego, for lack of subject-matter jurisdiction on February 9, 2022. (*See generally* OSC.) On February 23, 2022, Defendant timely filed the instant Response. (*See generally* Resp.)

## LEGAL STANDARD

"The right of removal is entirely a creature of statute and a suit commenced in a state court must remain there until cause is shown for its transfer under some act of Congress." *Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, 32 (2002). A suit filed in state court may be removed to federal court if the federal court would have had original

jurisdiction over the suit. *See* 28 U.S.C. § 1441(a). "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Removal is proper when a case originally filed in state court presents a federal question or where there is diversity of citizenship among the parties and the amount in controversy exceeds $75,000. *See* 28 U.S.C. §§ 1331, 1332(a). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

The party invoking the removal statute bears the burden of establishing that federal subject-matter jurisdiction exists. *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988). It is "presume[d] that federal courts lack jurisdiction unless the contrary appears affirmatively from the record," *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006) (quoting *Renne v. Geary*, 501 U.S. 312, 316 (1991)), and courts "strictly construe the removal statute against removal jurisdiction." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Boggs v. Lewis*, 863 F.2d 662, 663 (9th Cir. 1988)); *Takeda v. Nw. Nat'l Life Ins. Co.*, 765 F.2d 815, 818 (9th Cir. 1985)). Therefore, "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus*, 980 F.2d at 566 (citing *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979)).

## ANALYSIS

Defendant removed Plaintiff's Complaint based on diversity jurisdiction under 28 U.S.C. § 1332(a). (*See, e.g.*, NOR ¶ 9.) Federal courts have diversity jurisdiction "where the amount in controversy" exceeds $75,000, and the parties are of "diverse" state citizenship. *See* 28 U.S.C. § 1332(a). A defendant seeking to remove a case to federal court must provide only a "short and plain statement of the grounds for removal." *See* 28 U.S.C. § 1446(a). Consequently, "when a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *See Dart Cherokee Basin Operating Co. v. Owens*,

574 U.S. 81, 87 (2014). But "[i]f the plaintiff [or the court] contests the defendant's allegation, § 1446(c)(2)(B) instructs: '[R]emoval . . . is proper on the basis of an amount in controversy asserted' by the defendant 'if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds' the jurisdictional threshold." *See id.* at 88 (third and fourth alterations in original).

"[T]he plaintiff can contest the amount in controversy by making either a 'facial' or 'factual' attack on the defendant's jurisdictional allegations." *Harris v. KM Indus., Inc.*, 980 F.3d 694, 699 (9th Cir. 2020) (citing *Salter v. Quality Carriers*, 974 F.3d 959, 964 (9th Cir. 2020)). "A 'facial' attack accepts the truth of the [defendant's] allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'" *Id.* (alteration in original) (quoting *Salter*, 974 F.3d at 964). "A factual attack 'contests the truth of the . . . allegations' themselves," *id.* (alteration in original) (quoting *Salter*, 974 F.3d at 964), or "make[s] a reasoned argument as to why any assumptions on which they are based are not supported by evidence." *Id.* at 700 (citing *Salter*, 974 F.3d at 964; *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1199 (9th Cir. 2015)). "When a plaintiff mounts a factual attack, the burden is on the defendant to show, by a preponderance of the evidence, that the amount in controversy exceeds the . . . jurisdictional threshold." *Id.* at 699 (citing *Ibarra*, 775 F.3d at 1197). "[W]hen the defendant relies on a chain of reasoning that includes assumptions to satisfy its burden of proof, the chain of reasoning and its underlying assumptions must be reasonable ones." *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015) (citing *Ibarra,* 775 F.3d. at 1199). "Both parties may submit evidence supporting the amount in controversy before the district court rules."[1]  *Harris*, 980 F.3d at 699 (citing *Salter*, 974 F.3d at 963; *Ibarra*, 775 F.3d at 1197).

"In determining the amount in controversy, courts first look to the complaint." *Ibarra*, 775 F.3d at 1197. "Generally, 'the sum claimed by the plaintiff controls if the

---

[1] To the extent the Court views that Ford Motor Company is precluded from proving up a mileage offset, civil penalties, and attorneys' fees in its Order to Show Cause, (*see generally* "OSC"), this argument is foreclosed by the approach outlined by the Supreme Court in *Dart Cherokee*. *See* 574 U.S. at 87–88.

claim is apparently made in good faith.'" *Id.* (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). But "[w]here it is not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold." *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) (per curiam). When a damages estimate is articulated in the complaint and not "repeated in the Prayer for Relief . . . , the complaint fails to allege a sufficiently specific total amount in controversy," and the preponderance of evidence standard applies. *See Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007).

  Here, it is undisputed that the Parties are completely diverse; however, the Court *sua sponte* questioned whether Defendant had met its burden of establishing that the amount in amount in controversy exceeds $75,000. (*See generally* OSC.) In the Complaint, Plaintiff requests only "rescission of the purchase contract and restitution of all monies expended" and does not explicitly plead that the amount in controversy exceeds $75,000. (*See generally* Compl.; *see also id.* Prayer for Relief.) In its Response, Defendant makes certain assumptions—including that (1) the amount paid for the Vehicle is equal to the sales price in the contract, (2) there is no statutory mileage offset to be calculated, (3) a jury would award Plaintiffs the maximum civil penalty under the Act, and (4) Plaintiffs would be entitled to significant attorneys' fees, (*see* Resp. at 6–7; *see also* NOR ¶¶ 9–18)—to establish that the amount in controversy exceeds $75,000. Because the Court has questioned those assumptions, however, Defendant must establish by a preponderance of the evidence that the amount in controversy exceeds $75,000. *See, e.g.*, *Dart Cherokee*, 574 U.S. at 88.

  On the present record, the Court concludes that Defendant has failed to establish that the assumptions it used in calculating an amount in controversy exceeding the $75,000 threshold are reasonable and supported by a preponderance of the evidence. Under the Act, "if the manufacturer . . . does not service or repair the goods to conform to the applicable express warranties . . . , the manufacturer shall . . . reimburse the buyer in an

amount equal to the purchase price paid by the buyer, less that amount directly attributable to use by the buyer prior to the discovery of the nonconformity." Cal. Civ. Code § 1793.2(d)(1). Defendant's first two challenged assumptions relate to this calculation.

As for Defendant's first assumption, it has introduced evidence establishing by a preponderance of the evidence that Plaintiffs agreed to pay $54,018.56 under the contract for the purchase of the Vehicle. (*See* NOR ¶ 13; *see also* Resp. at 2.) Plaintiff requests "rescission of the purchase contract and restitution of all monies expended." (*See* Compl. Prayer for Relief ¶ 2.) The Act provides that, "[i]n the case of restitution, the manufacturer shall make restitution in an amount equal to the *actual price paid or payable by the buyer*." Cal. Civ. Code § 1793.2(a)(2)(B) (emphasis added). Defendant assumes that the "actual price paid or payable by the buyer" for the Vehicle is equal to the Total Sale Price in the Retail Installment Sale Contract ("RISC," ECF No. 1-5), which is $54,018.56. (*See id.* at 2;[2] *see also* NOR ¶ 13; Resp. at 2.) Although there is some disagreement among the federal district courts regarding the financed charges that are recoverable, *see, e.g.*, *Canesco v. Ford Motor Co.*, 570 F. Supp. 3d 872, 895 (S.D. Cal. 2021) ("[W]ith respect to a vehicle that is purchased, courts have been left with little guidance as to whether the purchaser should recover the outstanding loan balance in addition to amounts paid under a financing agreement."), the California Court of Appeals has found that "plaintiffs are entitled to recover the *paid* finance charges from defendant." *See Mitchell v. Blue Bird Body Co.*, 80 Cal. App. 4th 32, 39 (2000) (emphasis added). Where, as here, "the record does not show whether a plaintiff has made all installment payments for the amount financed, courts have found the total 'cash price' listed on a Retail Installment Sale Contract is a reasonable estimate of 'the actual price paid or payable' for the vehicle." *See Smith v. FCA US, LLC*, No. 221CV05347FLAGJSX, 2022 WL 2438355, at *3 (C.D. Cal. July 5, 2022) (citing *Luna v. FCA US LLC*, No. 21-cv-01230-LHK, 2021 WL 4893567, at *7 (N.D. Cal. Oct. 20, 2021); *Messih v. Mercedes-Benz USA, LLC*, No. 21-cv-03032-WHO, 2021 WL 2588977,

---

[2] Pin citations to the RISC refer to the CM/ECF pagination electronically stamped in the top, righthand corner of each page.

at *4 (N.D. Cal. June 24, 2021)).  Here, the "Total Cash Price" of the Vehicle is $24,740.00. (*See* RISC at 2.)

"To determine the restitution amount, the cash price is then reduced by a 'mileage offset' to account for the vehicle's reduction in value attributable to use by the plaintiff, as required by Cal. Civ. Code § 1793.2(d)(2)(C)."  *See Smith*, 2022 WL 2438355, at *3 (citing *Messih v. Mercedes-Benz USA, LLC*, No. 210cv093932-WHO, 2021 WL 2588977, at *4 (N.D. Cal. June 24, 2021)).  Regarding Defendant's second assumption, Defendant fails to introduce any evidence as to how many miles Plaintiff drove the Vehicle prior to the first repair.  (*See generally* NOR; Resp.)  "In the absence of such evidence, the Court finds that "[Defendant] fails prove by a preponderance of the evidence [Plaintiff's] actual damages based on the purchase price of the vehicle."  *See McDermott v. FCA US LLC*, No. EDCV211734JGBKKX, 2022 WL 159696, at *3 (C.D. Cal. Jan. 18, 2022) (citing *Mullin v. FCA US, LLC*, No. CV 20-2061-RSWL-PJW, 2020 WL 2509081, at *3–4 (C.D. Cal. May 14, 2020)); *see also Hernandez v. FCA US, LLC*, No. CV 20-1058-RSWL-MAA, 2020 WL 3497399, at *3 (C.D. Cal. June 29, 2020) ("Here, Defendant neglected to take into account the mileage offset when alleging that the amount in controversy exceeds the jurisdictional minimum.  Accordingly, Defendant has failed to prove actual damages by a preponderance of the evidence." (collecting cases)).

Turning to Defendant's third assumption, "[i]f the buyer establishes that the failure to comply was willful, the judgment may include . . . a civil penalty which shall not exceed two times the amount of actual damages."  Cal. Civ. Code § 1794(c); *accord* Cal. Civ. Code §§ 1794(e)(1), (5).  Defendant assumes that the full civil penalty is in controversy, (*see* Resp. at 7), but "when a defendant 'fail[s] to establish the amount of damages at issue,' then 'the Court cannot determine the amount of any potential civil penalty.'"[3]  *See*

---

[3]  Even if Defendant had established the amount of damages at issue in this case, "[d]istrict courts in the Ninth Circuit are split on whether to include Song-Beverly Act civil penalties in calculations to assess the amount in controversy."  *See Ferguson v. KIA Motors Am. Inc.*, No. 2:20-CV-01192-KJM-DB, 2021 WL 1997550, at *3 (E.D. Cal. May 19, 2021) (collecting cases); *see also Modiano v. BMW of N. Am. LLC*, No. 21-CV-00040-DMS-MDD, 2021 WL 973566, at *3 (S.D. Cal. Mar. 16, 2021) (collecting cases revealing split within this District).  Requiring the defendant to "make some effort to justify the

*McDermott*, 2022 WL 159696, at *4 (alteration in original) (quoting *Edwards v. Ford Motor Co.*, No. CV 16-05852 BRO (PLAx), 2016 WL 6583585, at *4 (C.D. Cal. Nov. 4, 2016)); *see also Nash v. FCA US LLC*, No. 521CV02092MEMFKKX, 2022 WL 2304030, at *5 (C.D. Cal. June 27, 2022) ("Because this Court finds that [the defendant] has not established actual damages by a preponderance of the evidence, the Court similarly finds that [the defendant]'s estimate of civil penalties in this case are not supported by the evidence and remain speculative.").

This brings the Court to Defendant's final assumption regarding the recovery of attorneys' fees. It is true that, "when a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) (citing *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018)).

---

assumption . . . appears more consistent with the general principle that where the state-court complaint does not specify a damage figure, the defendant must provide evidence establishing that it is more likely than not that the amount in controversy requirement is satisfied." *See Ronquillo v. BMW of N. Am., LLC*, No. 3:20-CV-1413-W-WVG, 2020 WL 6741317, at *3 (S.D. Cal. Nov. 17, 2020) (quoting *Sanchez*, 102 F.3d at 404) (citing *Matheson*, 319 F.3d at 1090); *see also Zawaideh v. BMW of N. Am., LLC*, No. 17-CV-2151 W (KSC), 2018 WL 1805103, at *2 (S.D. Cal. Apr. 17, 2018) (concluding that, as with punitive damages, "[r]ather than simply assume that because a civil penalty is available, one will be awarded, the defendant must make some effort to justify the assumption by, for example, pointing to allegations in the Complaint suggesting award of a civil penalty would be appropriate, and providing evidence—such as verdicts or judgments from similar cases—regarding the likely amount of the penalty.").

Here, "[o]ther than referring to Plaintiff[s'] allegation that [Ford Motor Company] acted willfully, however, [Ford Motor Company] provides no support for the likelihood that a civil penalty based on its willfulness would actually be awarded in this case, or that the full civil penalty would be awarded." *See Savall v. FCA US LLC*, No. 21CV195 JM (KSC), 2021 WL 1661051, at *3 (S.D. Cal. Apr. 28, 2021). "Moreover, even Plaintiff[s'] lengthy Complaint alleges only that [Ford Motor Company]'s obligations were willfully violated because, in effect, [Ford Motor Company] . . . failed to promptly provide Plaintiff[s] with satisfactory redress." *Id.*; *see also* Compl. ¶¶ 24-26, 47–49. "If such boilerplate allegations were sufficient . . . , then virtually any Song-Beverley action involving a new vehicle purchase would remain in federal court." *See Savall*, 2021 WL 1661051, at *3. Consequently, even if Defendant had established the amount of damages at issue by a preponderance of the evidence, the Court would still conclude that it has failed to meet its burden of establishing by a preponderance of the evidence that the full civil penalty authorized under the Act should be included in the amount in controversy. *See, e.g.*, *id.*; *cf. Zeto v. BMW of N. Am., LLC*, No. 20-CV-1380-GPC-KSC, 2020 WL 6708061, at *5 (S.D. Cal. Nov. 16, 2020) (including civil penalties in amount-in-controversy where the "[d]efendant submitted a detailed breakdown of how the civil penalties were calculated, backed up by passages from the complaint and other evidentiary exhibits").

"The defendant retains the burden, however, of proving the amount of future attorneys' fees by a preponderance of the evidence." *See id.* at 927–28 (quoting *Fritsch*, 899 F.3d at 788). "The type of evidence that courts have considered to estimate reasonable future attorney's fees include a percentage of economic damages alleged, fee awards in similar cases, and estimates of the number of hours that will likely be required to litigate the pending case multiplied by the opposing counsel's hourly rate." *Peck v. First Student, Inc.*, No. 3:17-CV-0863-SI, 2017 WL 3288116, at *3 (D. Or. Aug. 2, 2017) (collecting cases). The district court retains discretion, however, "to determine whether defendants have carried their burden of proving future attorneys' fees, and to determine when a fee estimate is too speculative because of the likelihood of a prompt settlement." *See Fritsch*, 899 F.3d at 795.

Here, Plaintiff alleges that they are entitled to attorneys' fees under the Act, (*see* Compl. ¶ 29), which explicitly authorizes the recovery of attorneys' fees. *See* Cal. Civ. Code § 1794(d). The Court therefore must include Plaintiff's prospective attorneys' fees in the amount in controversy, so long as Defendant provides a reasonable estimate supported by the preponderance of the evidence. *See Arias*, 936 F.3d at 922; *Fritsch*, 899 F.3d at 794. To meet its burden, Defendant cites cases in which "substantial" attorneys' fees were awarded, (*see* Resp. at 8–9 (citing *Pappas v. Ford Motor Co.*, No. 3:21-CV-00584-BEN KSC, 2021 WL 5810661 (S.D. Cal. Dec. 7, 2021) (awarding $21,660 where the plaintiff sought $48,947.80); *Tapia v. Ford Motor Co.*, No. 3:20-CV-01510-W-MSB, 2021 WL 5863597 (S.D. Cal. Oct. 19, 2021) (awarding $22,828.00 where the plaintiff sought $44,399.39)[4]), and introduces evidence of billing rates for Plaintiff's counsel. (*See id.* at 9 ($510 per hour in *Pappas* and a range of $335 to $530 per hour in *Tapia*).) Defendant also makes certain assumptions regarding depositions, concluding that "the most conservative assumption is $16,750.00 and as much as $26,500.00 in fees for *depositions alone*." (*See* Resp. at 9 (emphasis in original).)

---

[4] Defendant disingenuously cites the amount *sought* by the plaintiffs in each case, while the amount actually awarded in each case was approximately half that amount.

While a defendant may meet its burden to establish a reasonable estimate of attorneys' fees by identifying awards in other cases, those cases must be similar enough to the case at hand that the court can conclude that it is more likely than not that the plaintiff may incur a similar fee award. *See, e.g.*, *Cruz v. Mercedes-Benz USA, LLC*, No. 220CV05167ODWJCX, 2020 WL 5797917, at *3–4 (C.D. Cal. Sept. 29, 2020); *Peck*, 2017 WL 3288116, at *3. Here, "[a]ll that Defendant[] claim[s] is that the same counsel appears in each case and that the subject-matter of the cases are the same." *See Schneider v. Ford Motor Co.*, 441 F. Supp. 3d 909, 914 (N.D. Cal. 2020). In other words, Defendant "has failed to establish why this action is similar to th[e selected] . . . cases." *See Cruz*, 2020 WL 5797917, at *3. "Because [Ford Motor Company] only offers conclusions and speculative assumptions to substantiate its attorneys' fees calculation, [Ford Motor Company]'s statements fall short of the required summary judgment-type evidence." *See id.* Given Ford Motor Company's failure to substantiate a reasonable estimate of the attorneys' fees Plaintiffs may incur in this case, the Court declines to consider those fees as part of the amount in controversy. *See, e.g.*, *Schneider*, 441 F. Supp. 3d at 914 ("[B]ecause Defendants fail to provide the Court with specific evidence showing that the attorneys' fees *in this case* are 'more likely than not' to exceed $75,000, attorneys' fees cannot be used to satisfy the amount-in-controversy requirement." (emphasis in original).)

In sum, Ford Motor Company has failed to meet its burden of establishing by a preponderance of the evidence that the amount in controversy exceeds $75,000. The Court therefore concludes that it lacks subject-matter jurisdiction over this action.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

## CONCLUSION

For the foregoing reasons, the Court concludes that Defendant has failed to prove by a preponderance of the evidence that the amount in controversy exceeds $75,000 such that this Court has diversity jurisdiction over this matter.  The Court therefore **REMANDS** this action to the Superior Court of California, County of San Diego.  The Clerk of the Court **SHALL CLOSE** the file.

**IT IS SO ORDERED.**

Dated: September 1, 2022

_____
Honorable Todd W. Robinson
United States District Judge